# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

| | |
|---|---|
| SUSAN NOE, | CV 12-34-BU-DLC-JCL |
| Plaintiff, | |
| | ORDER |
| vs. | |
| WAL-MART STORES, INC., an Arkansas corporation, and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut insurance company, | |
| Defendants. | |

_____

Plaintiff Susan Noe ("Noe") brings this action seeking reinstatement of long-term disability insurance benefits she claims are due her under an ERISA-governed employee welfare benefit plan. Noe has filed a motion asking the Court to determine as a matter of law that she is entitled to de novo review of Defendant Hartford Life and Accident Company's ("Hartford") decision terminating her benefits, and seeking leave to conduct discovery. For the reasons set forth below, Noe's motion is denied.

**I.    Background**

In November 2006, Noe applied for long term disability benefits under a

group benefit plan ("the Plan") maintained by her former employer, Wal-Mart Stores, Inc. It is undisputed that the Plan, which is administered by Hartford, constitutes an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.

Noe alleged disability due to cardiovascular problems, chronic pain, fatigue, and loss of strength following femoral bypass surgery. Administrative Record ("A.R.") 205-14. Hartford approved Noe's application in January 2007, and began paying her benefits under the Plan. A.R. 189-92. Throughout 2008 and 2009, Hartford collected updated medical records from Noe's various medical providers. *See e.g.* A.R. 61-64, 78-79. In 2010, Hartford obtained two independent medical record reviews of Noe's updated file and conducted an employability analysis. A.R. 10-16, 22-25, 329-30. On July 27, 2010, Hartford advised Noe that it had completed its review of her claim and was terminating her benefits. A.R. 244-48.

Noe, who was by this time represented by counsel, submitted a written appeal on December 2, 2010. A.R. 396-97. Over the course of the next several months, Noe provided Hartford with additional medical records in support of her appeal. A.R. 411-28, 439-83, 484-96, 498-509. On July 28, 2011, Noe confirmed that her submissions were complete and Hartford began its review of her appeal. A.R. 237, 316.

As part of its appeal review process, Hartford asked a company by the name of MES Solutions to arrange a medical review of Noe's file for the purpose of clarifying her "medical situation and work capacity." A.R. 233. On Hartford's behalf, MES Solutions thereafter arranged for vascular surgeon Dr. Satish Muluk and neurologist Dr. Douglas Brown to review Noe's file. A.R. 526-31. As part of their review, both doctors contacted and spoke with at least one of Noe's treating medical providers. A.R. 526-31. Drs. Muluk and Brown issued their reports on September 8, 2011. A.R. 526-31. Because of several references to depression in Dr. Brown's report and Noe's medical records, Hartford notified Noe that it needed more information before it could decide her appeal. A.R. 61, 78-79, 444-46, 532-37. Through MES Solutions, Hartford then obtained an additional peer review report by psychiatrist Dr. Edward Darell. A.R. 569-71. As part of that review, Dr. Darell also contacted and spoke with one of Noe's treating health care providers. Ar. 569-71. Dr. Darell completed his report on September 29, 2011, and Hartford issued its decision denying Noe's appeal the next day. A.R. 23-35, 569-71.

On October 10 & 27, 2011, Noe's counsel wrote to Hartford requesting a copy of Noe's claim file. A.R. 573. Hartford received Noe's request on November 2, 2011, and by November 14, 2011, had provided Noe with a copy of

her complete claim file, including the medical review reports completed by Drs. Muluk, Brown, and Darell. A.R. 308, 573-575.

In May 2012, Noe commenced this action for judicial review under ERISA, seeking reinstatement of her long term disability benefits under the Plan. Dkt. 1. Noe has filed a motion asking the Court to rule on the applicable standard of review and hold that she is entitled to "de novo trial." Dkt. 25, at 9. Noe also moves for leave to conduct discovery in preparation for trial. In particular, Noe hopes to depose Matt Carson, the Hartford employee who authored the final decision denying her administrative appeal.

## II. Discussion

Noe's motion thus raises two issues: (1) whether a de novo or abuse of discretion standard of review applies in this case and (2) whether Noe should be allowed to conduct pretrial discovery. Because the availability and scope of discovery in an ERISA action is directly related to the applicable standard of review,[1] the Court must decide which standard of review to apply before it can determine whether Noe should be allowed to depose Mr. Carson.

An ERISA plan administrator's decision to deny or terminate benefits is

---

[1] See e.g. *Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 647 (E.D. Cal. 2009).

reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, that determination is reviewed for abuse of discretion." *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 981 (9th Cir. 2005) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1992)).

Here, it is undisputed that the Plan gave Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." A.R. 595, 614. Such a clear and unequivocal grant of discretion to the administrator is typically adequate to warrant application of the deferential abuse of discretion standard of review. See *Abatie v. Alta Health & Life Ins.*, 458 F.3d 955, 963-64 (9th Cir. 2006). Noe nonetheless argues she is entitled to de novo review of Hartford's decision because of serious procedural irregularities in Hartford's handling of her appeal.

The Ninth Circuit held in *Abatie* that courts are to take any "procedural irregularities" into account when reviewing a plan administrator's decision for an abuse of discretion. *Abatie*, 458 F.3d at 972. In most such cases, procedural

5

irregularities do not change the standard of review and are but one factor for the court to consider in deciding whether the administrator abused its discretion. *Abatie*, 458 F.3d at 972. In some cases, however, an administrator's failure to comply with ERISA's procedural requirements may be "so substantial as to alter the standard of review." *Abatie*, 568 F.3d at 971. Procedural violations may warrant de novo review if they "are so flagrant as to alter the substantive relationship between the employer and the employee, thereby causing the beneficiary substantive harm." *Abatie*, 458 F.3d at 971 (quoting *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005).

Noe argues that procedural irregularities in Hartford's handling of her administrative appeal denied her the "full and fair review" guaranteed by ERISA, 29 U.S.C. § 1133(2). In particular, Noe claims that Hartford denied her full and fair review because it decided her appeal based on new evidence that Noe did not have the opportunity to review or rebut, and identified an additional reason for terminating her benefits in its final decision without giving her a chance to respond. Noe also accuses Hartford of having improper ex-parte contact with her treating physicians while her administrative appeal was pending. Noe claims these alleged irregularities constitute such a severe violation of ERISA's full and fair review provision that Hartford's decision should be subject to de novo review.

A. <u>Medical review reports and content of Hartford's decision</u>

As discussed above, Hartford obtained medical record review reports from three physicians – Drs. Muluk, Brown, and Darell – while Noe's administrative appeal was pending. A.R. 526-31. Hartford expressly relied on all three reports in its decision upholding the termination of Noe's disability benefits. A.R. 230-35. Noe argues this was improper because "[n]ew evidence was created, upon which a decision to deny [her] benefits was based" and she "was given no opportunity to see this evidence created by doctors of whom [Noe] had never seen or heard." Dkt. 25.

To the extent Noe claims it was improper for Hartford to seek the opinions of medical reviewers during the administrative appeal process, she is mistaken. As Hartford points out, ERISA regulations provide that "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). The regulations also specify that the health care professional with whom the fiduciary consults cannot be someone who was "consulted in connection with the adverse benefit determination that is the subject of the appeal" or their subordinate. 29

C.F.R. § 2650.503-1(h)(3)(v). By arranging to have Noe's records reviewed by three physicians, Hartford did just what the regulations require.

To the extent Noe also complains that she was denied a full and fair review of her claim because Hartford did not provide her with copies of the physician reports before it decided her appeal, her argument is similarly misplaced. ERISA regulations require that, "[i]n the case of an adverse benefit determination on review, the plan administrator shall provide such access to, and copies of, documents, records, and other information" it relied on in making its decision and that are relevant to the appeal. 29 C.F.R. § 2560.503-1(i)(5). While this regulation makes clear that a plan administrator must provide these materials once it has made "an adverse benefit determination on review," it says nothing about whether the administrator must do so while a claimant's administrative appeal is still pending.

Hartford takes the position that it was not obligated to provide Noe with a copy of the physician reports prepared by Drs. Muluk, Brown, and Darell until after it issued its decision denying her appeal. For support, Hartford relies on *Metzger v. Unum Life Ins. Co. of America*, 476 F.3d 1161, 1167 (10th Cir. 2007), in which the Tenth Circuit concluded that a plan administrator is not required "to provide a claimant with access to the medical opinion reports of appeal-level

reviewers prior to a final decision on appeal." The court reasoned that "[p]ermitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal...would set up an unnecessary cycle of submissions, review, re-submission, and re-review," which "would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days." *Metzger* instead held that:

> [T]he regulations mandate provision of relevant documents, including medical reports at two discrete stages of the administrative process. First, relevant documents generated or relied upon during the initial claims determination must be disclosed prior to or at the outset of an administrative appeal. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii). Second, relevant documents generated during the administrative appeal – along with the claimant's file from the initial determination – must be disclosed after a final decision on appeal. *See* 29 C.F.R. § 2560.503-1(i)(5). So long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses, this two-phase disclosure is consistent with 'full and fair review.'

*Metzger*, 476 F.3d at 1167.

A number of courts within the Ninth Circuit have followed *Metzger* and concluded that a plaintiff is not entitled to review and rebut medical review reports generated during the course of an administrative appeal until after the administrator has issued its final decision. *See e.g.*, *Rada v. Cox Enterprises, Inc.*, 2012 WL 3262867 *7 (D. Nev. 2012); *Landes v. Intel Corp.'s Long Term Disability Plan*, 2010 WL 3155869 * 3 (N.D. Cal. 2010) ; *Winz-Byone v.*

*Metropolitan Life Ins. Co.*, 2008 WL 962867 *8 (C.D. Cal. 2008). In *Rada*, for example, the court concluded that "after a claimant has submitted an appeal, an administrator can prepare further documents relevant to [the] appeal," but "is only required to disclose them upon request *after* it makes its final determination." *Rada*, 2012 WL 3262867 *7 (emphasis in original). The *Rada* court reasoned that "[a]s long as the claimant has access to the documents generated on appeal at the district court where she brings her claim, the claimant is deemed to have 'had ample opportunity to respond.'" *Rada*, 2012 WL 3262867 *7 (*quoting Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n. 2 (9th Cir. 2006)).

As the *Metzger* court specifically pointed out, however, the two-phase disclosure process it described was consistent with ERISA's full and fair review requirements only "[s]o long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses...." The Ninth Circuit recognized much the same principle in *Abatie,* explaining that "[w]hen an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Abatie*, 458 F.3d at 974. *Abatie* made clear that

10

when an administrator adds "a new reason for denial" in its final decision, such a maneuver "has the effect of insulating the rationale from review" and so "contravenes the purpose of ERISA." *Abatie*, 458 F.3d at 974.

Noe argues that is just what Hartford did in this case because it "created a straw man (depression) and then used it as a lynchpin to create a new reason for denial of her claim." Dkt. 25, at 9. But Noe does not claim that she is disabled by depression, and never has. In fact, Noe concedes, her "mental health has never been the reason for her disability." Dkt. 25, at 5. Regardless, even assuming it could be said that Hartford somehow added a new reason for terminating Noe's benefits when it found that she did not suffer from disabling depression, that irregularity would not be enough to warrant de novo review. *Abatie* made clear that when an administrator adds a new reason for denial in its final decision, thereby "insulating the rationale from review," such a "procedural violation must be weighed by the district court in deciding whether [the administrator] abused its discretion." *Abatie*, 458 F.3d at 974. In other words, such a procedural irregularity would be one factor for this Court to take into account when reviewing Hartford's decision for an abuse of discretion. *Abatie*, 458 F.3d at 972. The irregularity would not, as Noe contends, mandate a de novo trial.

As Noe points out, *Abatie* correspondingly recognized that "[e]ven when

11

procedural irregularities are smaller, [] and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record." *Abatie*, 458 F.3d at 973. This allows the court to, "in essence, recreate what the administrative record would have been had the procedure been correct." *Abatie*, 458 F.3d at 973.

Here, however Noe fails to explain how the fact that Hartford chose to have her records reviewed by a mental health specialist in any way prevented full development of the administrative record. Noe does not argue that she is disabled by depression, and does not seek leave to supplement the record with additional evidence to rebut Hartford's assessment regarding the severity of her depression. To the contrary, Noe concedes her "mental health has never been the reason for her disability." Dkt. 25, at 5. Noe does not explain how the administrative record might have been any different had she known about Dr. Darell's report before Hartford decided her appeal, and does not seek leave to supplement the administrative record with anything relating to the issue of depression.

Apart from her request that the Court declare as a matter of law that she is entitled to de novo review, her only request is that she be granted leave depose Matt Carson, the Hartford employee who wrote the decision denying her administrative appeal. But Noe fails to explain how deposing Mr. Carson would

in any way serve to recreate what the administrative record would have been had Hartford not sent her file to a psychiatrist for review. The fact that Hartford thoroughly considered the severity of her depression – an impairment that Noe does not even argue is disabling – in its final decision does not mean that she should be allowed to depose the Hartford employee who wrote the decision, or otherwise entitle her to de novo review.

      B.    <u>Ex-parte contact</u>

Noe also accuses Hartford of having improper ex-parte contact with her treating physicians while her administrative appeal was pending. According to Noe, those ex-parte contacts were such an egregious procedural irregularity that this Court should conduct a de novo review of Hartford's decision and allow her to depose Mr. Carson.

It is undisputed that MES Solutions, acting on Hartford's behalf, arranged for Drs. Muluk, Brown, and Darell to conduct medical reviews of Noe's file. MES Solutions apparently anticipated that the doctors would speak to Noe's medical care providers, because it specifically asked all three doctors to consider whether "[b]ased on the medical information on file and your conversations with Ms. Noe's treatment providers," Noe "was impaired or limited in any way" as of August 1, 2010. A.R. 527, 529, 570. As contemplated by MES Solutions, Drs.

13

Muluk, Brown, and Darell each spoke by telephone with at least one of Noe's medical care providers during the course of their review. A.R. 526-31, 569-71.

Noe argues she did not authorize Hartford to speak personally with her health care providers and claims the ex parte conversations violated Montana's physician-patient privilege. Under Montana law, "a licensed physician...cannot, without the consent of the patient, be examined in a civil action as to any information acquired in attending the patient that was necessary to enable the physician...to prescribe or act for the patient." Mont. Code Ann. § 26-1-805. This means that, in Montana, "[d]efense lawyers and treating doctors are prohibited from meeting to discuss the plaintiff unless the plaintiff's lawyer is present or unless the plaintiff gives her consent to the *ex parte* meeting." *Hampton v. Schimpff*, 188 F.R.D. 589, 590 (D. Mont. 1999) (*citing Jaap v. District Court of the Eighth Judicial District*, 623 P.2d 1389 (1981)). Citing *Hampton,* Noe maintains that Hartford violated her physician-patient privilege by allowing its doctors to speak with her health care providers without her consent.

In response, Hartford argues that because Noe's lawsuit arises under ERISA, the applicable rules of privilege in this case derive from federal common law, rather than state law. And because there is no physician-patient privilege under federal common law, Hartford takes the position that its communications

14

with Noe's physicians were not prohibited. Hartford is correct.

Federal Rule of Evidence 501 directs that "[t]he common law – as interpreted by United States courts in light of reasons and experience – governs a claim of privilege unless" the United States Constitution, a federal statute, or Supreme Court rules provide otherwise. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

As Noe's Complaint reflects, her claims in this case arise under ERISA, 29 U.S.C. § 1132 and therefore raise a federal question to be resolved under federal common law.[2] Dkt. 1, at 2. Because federal law supplies the rule of decision for Noe's ERISA claims, Rule 501 directs that federal common law likewise governs any claim of privilege. *See Westerhide v. Hartford Life Ins. Co.*, 2011 WL 5125921 *2 (S.D. Ill. 2011); *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 506 (7th Cir. 1995); *Folb v. Motion Picture Industry Pension & Health Plans*, 16 F.Supp.2d 1164, 1169 n.4 (C.D. Cal. 1998) (even "where evidence is relevant to both state and federal questions, the federal common law of privileges should apply to protect the exclusive federal concerns central to ERISA even if Rule 501

---

[2] Although Noe cites the diversity statute, 28 U.S.C. § 1332(a), as the premise for this Court's jurisdiction, she specifically alleges that "[t]his action arises under [ERISA], and more particularly, § 1132(a)(1)(B)." Dkt. 1, at 2.

might otherwise require application of state law to pendent state claims").

It is well-established that "[t]he patient-physician privilege does not exist at federal common law and the Ninth Circuit has not recognized a physician-patient privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995) (*citing In Re Grand Jury Proceedings,* 867 F.2d 562, 564-65 (9th Cir. 1989)). Because Montana's physician-patient privilege does not apply and there is no comparable privilege under federal law, Hartford did not violate Noe's right to privacy by having ex parte contact with her health care providers before making its appeal decision.[3]

Noe does not challenge the propriety of that ex parte contact on any other basis. Because Montana's physician-patient privilege does not apply in this case, Noe has failed to establish that Hartford's ex parte contacts with her doctors were a procedural irregularity at all, much less one warranting de novo review or the taking of Mr. Carson's deposition.

## III. Conclusion

For the reasons set forth above,

---

[3] Having so concluded, the Court need not address Hartford's alternative argument, which is that Noe authorized it to speak directly with her doctors because she signed a release allowing Hartford to obtain "[a]ny and all medical information or records" from "[a]ny health care provider." A.R. 515; Dkt. 36, at 9-10.

IT IS ORDERED that Noe's Motion to Conduct Discovery and for Trial *De Novo* is DENIED.

DATED this 15th day of January, 2013

Jeremiah C. Lynch
United States Magistrate Judge